**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-16-02680-TUC-CKJ (BGM) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Janett Lynn Anderson, | |
| Defendant. | |

Currently pending before the Court is Defendant Janett Lynn Anderson's Motion to Suppress Stop on Fourth Amendment Grounds (Doc. 41). The Government has filed its response. Govt.'s Response to Def.'s Mot. to Suppress Stop on Fourth Amendment Grounds (Doc. 49). No reply was filed. Defendant is charged with two (2) counts of transportation of illegal aliens for profit and one (1) count of conspiracy to transport illegal aliens for profit, all in violation of Title 8, United States Code, Section 1324. Indictment (Doc. 15) at 1–2. Defendant Janett Lynn Anderson seeks suppression of all evidence obtained as a result of an allegedly faulty traffic stop. *See* Def.'s Mot. to Suppress Stop on Fourth Amendment Grounds (Doc. 41).

Pursuant to LRCrim. 5.1, this matter came before Magistrate Judge Macdonald for

an evidentiary hearing and a report and recommendation. On August 7, 2017, an evidentiary hearing was held before Magistrate Judge Macdonald regarding the motion. Minute Entry 8/7/2017 (Doc. 52). On August 18, 2017, the final transcripts were received and this matter became ripe for adjudication. The Magistrate Judge recommends that the District Court, after its independent review, deny Defendant's motion.

## I. FACTUAL BACKGROUND

On December 10, 2016, Arizona Department of Public Safety ("DPS") Officer Rene Algara was working a late shift. Hr'g Tr. 8/7/2017 (Doc. 67) at 6:25–7:13. Officer Algara has been employed with DPS for nearly two (2) years. *Id.* at 5:20–6:8. His current assignment is as a state trooper assigned to the Bisbee and Douglas area—from the New Mexico state line to the east to the checkpoint past Tombstone along Highway 80 and from the checkpoint past Elfrida almost to Palominas on State Route 92. *Id.* at 6:9–21. Prior to joining DPS, Officer Algara was a City of Bisbee police officer. *Id.* at 5:24–6:8.

At approximately 7:27 p.m. on December 10, 2017, Officer Algara was patrolling State Route 80 in the Bisbee area. Hr'g Tr. 8/7/2017 (Doc. 67) at 8:22–25, 17:19–21. Officer Algara was parked, facing westbound, monitoring traffic between mileposts 343 and 342. *Id.* at 9:4–21. Officer Algara acknowledged that it was dark at that time of evening. *Id.* at 9:1–3, 17:22–24. Officer Algara testified that he observed a white Honda Civic at Milepost 343 and pointed his LIDAR laser gun at the vehicle to obtain its speed.

*Id.* at 12:22–13:6, 15:2–4. Officer Algara further testified that the vehicle was traveling 41 miles per hour in a 30 mile per hour zone. *Id.* at 12:22–13:6, 15:5–9, 15:24–16:3, 19:22–20:6. Officer Algara also testified that his report mistakenly states that it was a 35 mile per hour posted speed limit instead of the actual 30 mile per hour limit. *Id.* at 15:10–23.

Officer Algara testified that as a DPS officer he has been trained to visually estimate how fast a vehicle is traveling, as well as being certified in the use of LIDAR and radar. Hr'g Tr. 8/7/2017 (Doc. 67) 13:7–13, 14:2–17. Officer Algara described the use of the LIDAR, and explained that you can target a specific vehicle to obtain the speed of that vehicle, even if there are multiple cars present. *Id.* at 13:14–14:1, 20:12–17.

Officer Algara testified that he pulled out behind the white Honda Civic, followed for approximately one mile, turned on his lights and executed the stop. Hr'g Tr. 8/7/2017 (Doc. 67) at 8:2–21, 16:4–8, 20:18–25. Officer Algara further testified that Defendant's driving in excess of the posted speed limit was his sole reason for stopping her. *Id.* at 22:3–5. Officer Algara made contact with the female driver of the vehicle, who was identified as Janett Lynn Anderson. *Id.* 16:9–20.

**II. ANALYSIS**

Defendant seeks suppression in this case, because "[t]here will be no evidence whatsoever that Ms. Anderson driving at 41 mph at 7:27 p.m. was 'unreasonable' and imprudent 'under the circumstances, conditions and actual and potential hazards then existing.'" Def.'s Mot. to Suppress (Doc. 41) at 4. Defendant further argues that "[t]he

fact that many law enforcement officers in Arizona have the mistaken belief that driving one or two mph above or below the posted limits gives them the right to pull over any motorist does not excuse the fourth amendment violation here." *Id*.

### A. Fourth Amendment—In general

"The Fourth Amendment prohibits 'unreasonable searches and seizures' by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 750, 151 L.Ed.2d 740 (2002) (citing *Terry v. Ohio*, 392 U.S. 1, 9, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)). For the police to conduct a valid stop, they must "have a reasonable suspicion supported by articulable facts that criminal activity may be afoot." *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989) (internal quotes and citation omitted). "[T]he level of suspicion required for a *Terry* stop[, however,] is obviously less demanding than that for probable cause." *Id.* at 8, 109 S.Ct. at 1585 (internal citations omitted).

### B. Reasonable suspicion

"Reasonable suspicion is defined as 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *Id.* (quoting *United States v. Cotterman*, 709 F.3d 952, 968 (9th Cir. 2013) (en banc)). "The reasonable-suspicion standard is not a particularly high threshold to reach." *Valdes-Vega*, 738 F.3d at 1078. Furthermore, although "a mere hunch is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls

considerably short of satisfying a preponderance of the evidence standard." *Id.* (quoting *Arvizu*, 534 U.S. at 274, 122 S.Ct. 744) (citations and internal quotation marks omitted).

When making a reasonable-suspicion determination, the reviewing court "must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 750, 151 L.Ed.2d 740 (2002) (citations omitted); *see also United States. v. Alvarez*, 899 F.2d 833, 836 (9th Cir. 1990). In so doing, officers are allowed "to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *Id.* at 273, 122 S.Ct. at 750-51. (citations omitted); *see also Valdes-Vega*, 738 F.3d at 1078. Moreover, what may seem to be innocuous conduct when viewed in isolation may be appropriately considered when considering the totality of the circumstances; thus, it is inappropriate to view factors in isolation and to give no weight to factors which may have an innocent explanation. *Arvizu*, 534 U.S. at 273-75, 122 S.Ct. at 750-51; *see also Cotterman*, 709 F.3d at 970 ("It is not our province to nitpick the factors in isolation but instead to view them in the totality of the circumstances."). Furthermore, "A determination that reasonable suspicion exists . . . need not rule out the possibility of innocent conduct." *Valdes-Vega*, 738 F.3d at 1078-79 (citing *Arvizu*, 534 at 277, 122 S.Ct. 744) (alterations in original).

The Government satisfies its "burden of production by coming forward with 'specific and articulable facts,' *Terry* [*v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 20 L.Ed.2d

889 (1968)] to support [an officer's] suspicion of illegal activity." *United States v. Willis*, 431 F.3d 709, 715 n. 5 (9th Cir. 2005). Defendant has the burden of proof on a motion to suppress, and as such must "introduce contrary evidence or get the officer to retract his testimony on cross-examination." *Id.*

### C. Arizona Statutes

Section 28-702, Arizona Revised Statutes, governs state highway speed limits and provides:

> A. If the director determines on the basis of an engineering and traffic investigation that any maximum speed limit is greater or less than is reasonable or safe under the conditions found to exist on any part of a state highway, the director may determine and declare a reasonable and safe maximum speed limit or varying speed limits for the location.
>
> B. The maximum speed limit determined pursuant to this section is effective when appropriate signs giving notice of the maximum speed limit are erected.
>
> C. The director may declare a maximum speed limit that is determined pursuant to this section to be effective at all times or at such times as indicated on the speed limit signs. The director may establish varying speed limits for different times of day, different types of vehicles, varying weather conditions and other factors bearing on safe speeds. The varying limits are effective when posted on appropriate fixed or variable signs.

A.R.S. § 28-702. Defendant relies on A.R.S. § 28-701 regarding reasonable and prudent speed, which provides:

> A. A person shall not drive a vehicle on a highway at a speed greater than is reasonable and prudent under the circumstances, conditions and actual and potential hazards then existing. A person shall control the speed of a vehicle as necessary to avoid colliding with any object, person, vehicle or other conveyance on, entering or adjacent to the highway in compliance with legal requirements and the duty of all persons to exercise reasonable care for the protection of others.

B. Except as provided in subsections C and D of this section or except if a special hazard requires a lesser speed, any speed in excess of the following speeds is prima facie evidence that the speed is too great and therefore unreasonable:

   1. Fifteen miles per hour approaching a school crossing.

   2. Twenty-five miles per hour in a business or residential district.

   3. Sixty-five miles per hour in other locations.

C. The speed limits prescribed in this section may be altered as authorized in sections 28-702 and 28-703.

D. The maximum speed provided in this section is reduced to the speed that is reasonable and prudent under the conditions and with regard to the actual and potential hazards then existing, including the following conditions:

   1. Approaching and crossing an intersection or railroad crossing.

   2. Approaching and going around a curve.

   3. Approaching a hillcrest.

   4. Traveling on a narrow or winding roadway.

   5. A special hazard exists with respect to pedestrians or other traffic or by reason of weather or highway conditions.

E. A person shall not drive a motor vehicle at a speed that is less than the speed that is reasonable and prudent under existing conditions unless the speed that is reasonable and prudent exceeds the maximum safe operating speed of the lawfully operated implement of husbandry.

### D. *The instant case*

Defendant argues that "[s]tatutory provisions that establish or permit establishment of safe speed limits are rules of evidence, not rules of substantive law, and raise rebuttable presumptions that may be overcome by evidence." Def.'s Mot. to Suppress (Doc. 41). Defendant, however, has not presented or suggested any evidence

to rebut the fact that she was traveling at 41 miles per hour in a 30 mile per hour speed zone. Section 28-701, Arizona Revised Statute, specifically contemplates that the reasonably and prudent speed may be altered as provided in Section 28-702. A.R.S. § 28-701(C). Section 28-702 unequivocally states that "[t]he maximum speed limit determined pursuant to this section is effective when appropriate signs giving notice of the maximum speed limit are erected." A.R.S. § 28-702(C). Here, the posted speed limit was 30 miles per hour. Hr'g Tr. 8/7/2017 (Doc. 67) at 12:22–13:6, 15:5–9, 15:24–16:3, 19:22–20:6. Moreover, "[i]t is uncontestable that traveling at any speed over the posted speed limit is a traffic offense and a trooper is justified in stopping a vehicle for the offense." *U.S. v. Garcia*, 897 F.2d 1413, 1419 (7th Cir. 1990).

The Court finds Officer Algara's testimony credible. Officer Algara determined Defendant's speed using his LIDAR, and accordingly effectuated a traffic stop. Hr'g Tr. 8/7/2017 (Doc. 67) at 12:22–13:6, 15:2–4. Defendant failed to make Officer Algara retract his statement or otherwise present evidence sufficient to undermine the finding of reasonable suspicion. As such, the Government has met its burden to demonstrate "specific, articulable facts" sufficient to support a finding of reasonable suspicion of Defendant committing a traffic violation. *See Terry v. Ohio*, 392 US 1, 21, 88 S. Ct. 1868, 20 L.Ed.2d 889 (1968). Defendant's motion should be denied.

## III.   CONCLUSION

The Court finds that Officer Algara had reasonable suspicion to stop Defendant for driving in excess of the posted speed limit. As such, any evidence obtained as a result of

that stop should not be suppressed.

## IV. RECOMMENDATION

For the foregoing reasons, the Magistrate Judge recommends that the District Judge DENY Defendant Janett Lynn Anderson's Motion to Suppress Stop on Fourth Amendment Grounds (Doc. 41).

Pursuant to 28 U.S.C. §636(b) and Rule 59(b)(2) of the Federal Rules of Criminal Procedure, any party may serve and file written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. No reply shall be filed unless leave is granted from the District Court. If objections are filed, the parties should use the following case number: **CR-16-2380-TUC-CKJ**.

Failure to file timely objections to any factual or legal determination of the Magistrate Judge in accordance with Fed. R. Crim. P. 59 may result in waiver of the right of review.

Dated this 15th day of September, 2017.

Honorable Bruce G. Macdonald
United States Magistrate Judge